Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 3008 | DATE | 11/9/2000 |
| CASE TITLE | Leroy Anderson vs. Dwayne A. Clark | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Leroy Anderson's petition for writ of habeas corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 2000 date docketed | |
| ✓ | Docketing to mail notices. | | 24 |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | docketing deputy initials | |
| EF | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 NOV -9 PM 5:00 | NOV 13 2000 date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA, ex rel.<br>LEROY ANDERSON,<br><br>                Petitioner,<br><br>vs.<br><br>DWAYNE A. CLARK,<br><br>                Respondent. | No. 99 C 3008<br><br>HONORABLE CHARLES R. NORGLE<br><br>*[stamp:] NOV 1 3 2000* |

**OPINION AND ORDER**

CHARLES R. NORGLE, Sr., District Judge:

Before the court is Leroy Anderson's ("Anderson") petition for writ of habeas corpus under 28 U.S.C. § 2254. For the following reasons, the court denies the petition.

I. BACKGROUND

Anderson was convicted of first degree murder and armed robbery following a bench trial in the Circuit Court of Cook County. Anderson received a sentence of natural life for murder, concurrent with sixty years for armed robbery.

The court takes the relevant facts from the Illinois Appellate Court's order affirming Anderson's conviction.[1] On habeas review, the court presumes that the Illinois court's factual

---

[1] In a bound volume, Respondent provided copies of the state court proceedings, including the parties' briefs and the state court opinions. The court refers to these documents by the bound volume's record cite and exhibit designation. The Illinois appellate court's order on direct appeal is (R. 16, Ex. A).

1

findings are correct. See Sumner v. Mata, 449 U.S. 539, 554-46 (1981); 28 U.S.C. § 2254(e)(1); see also Rodriguez v. Peters, 63 F.3d 546, 554 (7th Cir.1995) ("Factual findings that have been decided by the state trial or appellate courts are presumptively correct.") (quoting Montgomery v. Greer, 956 F.2d 677, 680 (7th Cir. 1992)).

On December 6, 1991 at 5:00 a.m., a passerby discovered the body of the victim, Charles Jones,[2] near the staircase of his Chicago apartment building. The victim had been shot to death. When police arrived, they cordoned off the crime scene, and entered the victim's apartment. In the apartment, police found an envelope from the Illinois Department of Public Aid ("IDPA"), which contained an identification card for Ms. Lee Jones ("Jones"). Although the IDPA envelope listed a different address for Jones, one of the victim's neighbors told police that Jones had been living with the victim.

Police went to the address listed on the IDPA envelope to look for Jones. The police did not find Jones at that address, but they did find Anderson, and took him to the police station, where they placed him in an interview room. The police then returned to the victim's apartment building, where they found Jones, and her friend, Annie Walker ("Walker"). Jones and Walker agreed to go with the police to the station.

The police placed Jones and Walker in separate interview rooms, and began to separately interview Jones, Walker, and Anderson. The police chose to interview Jones first, and gave her Miranda warnings. Jones told police that she was with Walker the previous night, and did not learn of the victim's death until that morning. The police then interviewed Walker and Anderson, who

---

[2] The name of Anderson's co-defendant is Lee Jones. For clarity, the court refers to Charles Jones as "the victim."

2

both gave different versions of events.[3] The police then went back to Jones, administered fresh Miranda warnings, and confronted her with the inconsistencies. Jones then confessed her role in the murder.

According to Jones, she and Anderson planned to rob the victim of his paycheck. Anderson was to recruit a friend to rob the victim. If Anderson was unable to find someone, he would rob the victim himself, and then kill the victim to avoid identification. Jones and Anderson devised this plan a few days before the murder, and Anderson showed Jones the gun he intended to use. On the night of the murder, Jones waited in the victim's apartment while Anderson waited outside for the victim to arrive. Jones heard gunshots, and then left the apartment to meet with Anderson. Anderson explained that he shot the victim because he would not turn over any money. Anderson said the victim only had a few dollars, and gave Jones between three and five dollars. Anderson and Jones then went to Anderson's apartment, where they shared some drugs. Later, Jones returned to the victim, took his paycheck from his body, and went to Walker's apartment.

The police then confronted Anderson with Jones' story. Anderson denied Jones' story, and the police went back to Jones with Anderson's denial. Jones asserted that she was telling the truth, and said she would confront Anderson herself. The police allowed Jones to personally confront Anderson with her version of the events. The police then read Miranda warnings to Anderson, and he said that Jones' version of the murder was correct, thereby confessing to the crime.

---

[3]The Illinois appellate court's order does not provide Walker's and Anderson's versions of the previous night. For a detailed description of their stories, see the parties' briefs submitted to the Illinois appellate court on Anderson's direct appeal. (See R. 16, Ex. B & C.)

3

Prior to trial, Anderson moved to quash his arrest and suppress his confession. The court held a two part suppression hearing, and quashed Anderson's arrest, but held that the confession was admissible. (See R. 16 Ex. M & R. 23.)[4] At the first hearing, the court determined that the police arrested Anderson without probable cause, and quashed his arrest. Then, the court scheduled a hearing to determine whether Anderson's confession was attenuated from his illegal arrest.

At the second hearing, the court found that Anderson's confession was admissible because it was attenuated from his illegal arrest. (See R. 23.) Neither side put forth new evidence at the attenuation hearing. Rather, the parties presented legal arguments as to the admissibility of Anderson's confession. In finding the attenuation, the court relied on: (1) the good faith of the arresting/interrogating officers; (2) an objective finding that Anderson was not under duress at the time he confessed; and (3) the fact that Anderson's confession came after he was confronted with Jones' confession.

Jones and Anderson had simultaneous severed trials. A jury convicted Jones, while Anderson was convicted by the bench. Jones received a sentence of 30 years for armed robbery and 35 years for murder, to be served concurrently. Anderson received a sentence of 60 years for armed robbery and natural life for murder, to be served concurrently. Both Jones and Anderson filed direct appeals.

On direct appeal, Anderson argued that his confession should have been suppressed because it was not attenuated from his arrest. According to Anderson, the police did not have probable cause

---

[4]Respondent originally provided the transcript of only the first motion to suppress hearing. (See R. 16, Ex. M.) Upon the court's order, Respondent submitted a transcript of the second attenuation hearing. (See R. 23.)

4

to arrest Jones, and that her statement inculpating Anderson was itself illegal evidence. Thus, Anderson argued that his confession was not attenuated from his arrest because he only confessed after being confronted with illegal evidence. In an unpublished order, the Illinois appellate court reversed Jones' conviction, and affirmed Anderson's conviction. The appellate court found that Jones was not under arrest at the time she confessed and implicated Anderson, and therefore the police did not confront Anderson with illegal evidence. The appellate court went on to discuss the attenuation of Anderson's confession, and concluded that his confession was attenuated from his illegal arrest. Anderson sought leave to appeal in the Illinois Supreme Court, which was denied.

Anderson continued to attack his conviction with a post-conviction petition.[5] Anderson argued: (1) he was denied effective assistance of appellate counsel on direct appeal; (2) he was denied a full and fair opportunity to litigate the admissibility of his confession; (3) his sentence was grossly disparate from Jones' sentence; and (4) he was denied effective assistance of trial counsel for failing to dispute the disparate sentences. The court found the petition to be frivolous and patently without merit because Anderson did not file the petition within three years of the date of his conviction, as required by Illinois law. (See R. 16, Ex. H.) The court also noted that claims 2-4 were matters that were, or could have been, raised on direct appeal. Therefore, those claims were barred by res judicata and waiver. The court also rejected the remaining claim, ineffective assistance of appellate counsel, because Anderson failed to demonstrate that his appellate counsel's performance was deficient under Strickland v. Washington, 466 U.S. 668 (1984).

---

[5]Respondent submitted an incomplete copy of Anderson's post-conviction petition, in that some pages were miscopied or missing. (See R. 16, Ex G). Anderson attached a complete copy of his post-conviction petition to his reply brief, which the court has reviewed. (See R. 20.)

5

Anderson appealed the denial of his post conviction petition, and was appointed counsel. Anderson's counsel moved to withdraw, citing <u>Pennsylvania v. Finley</u>, 481 U.S. 551 (1987). (<u>See</u> R. 16, Ex. I.) The appellate court granted counsel's motion to withdraw, and affirmed the trial court's denial of Anderson's post conviction petition. (<u>See</u> R. 16, Ex. J.) Anderson sought leave to appeal the denial to the Illinois Supreme Court, which was denied.

On May 4, 1999 Anderson filed his petition for writ of habeas corpus in this court, asserting: (1) he did not receive a full and fair opportunity to litigate his Fourth Amendment claim; (2) he received ineffective assistance of trial counsel; and (3) his sentence was excessive.

Respondent counters the petition, arguing that claims 2 and 3 are procedurally defaulted. According to Respondent, the only issue that Anderson properly preserved is the Fourth Amendment issue, which Respondent asserts is barred under <u>Stone v. Powell</u>, 428 U.S. 465 (1976).

## II. DISCUSSION

The court first discusses the general rules of federal habeas review, including procedural default, and then discusses each of Anderson's claims.

### A. Standard of review

Anderson's case is governed by 28 U.S.C. § 2254 (d), which sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court recently examined § 2254(d)(1), and held that the "contrary to" clause and the "unreasonable application" clause encompass two types of error that will cause a writ to issue. See Williams v. Taylor, – U.S. –, 120 S. Ct. 1495, 1516-23 (2000) (opinion of O'Connor, J.). The "contrary to" clause describes a state court decision that is opposite to the law announced by the Supreme Court, or where the state court "confronts facts that are materially indistinguishable from . . . relevant Supreme Court precedent," and reaches a conclusion opposite to that of the Supreme Court. See id. at 1519 (also describing "contrary to" as "diametrically different," "opposite in character or nature," or "mutually opposed").

As the plain text of the statute reads, the "unreasonable application" clause of § 2254(d)(1) refers to cases where the state court unreasonably applies Supreme Court precedent to the facts of a particular case. See id. at 1520-21 (discussing different scenarios of unreasonable application of facts, but ruling that "[f]or now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause."). Whether the state court's decision was reasonable is an objective question. See id. at 1521 ("a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable."). The reasonableness question does not turn on the correctness of the state court's decision. See id. at 1522. Put another way, a federal habeas court should uphold a state court's decision that was reasonable, even if it was erroneous. See id. (holding

7

that a federal habeas court should not issue a writ simply because it concludes that the state court erroneously applied federal law, rather, the application must also be unreasonable); cf. Schaff v. Snyder 190 F.3d 513, 523 (7th Cir. 1999) (holding that a federal habeas court should uphold a state court ruling that is minimally consistent with the facts and circumstances of the case).

Section 2254(d)(2) involves the state court's determination of the facts, which are presumed correct. See 28 U.S.C. 2254(e)(1); see also Rodriguez v. Peters, 63 F.3d 546, 554 (7th Cir.1995) ("Factual findings that have been decided by the state trial or appellate courts are presumptively correct."). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.  Procedural default**

Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842-43 (1999); see also Spreitzer v. Schomig, 219 F.3d 639, 644-45 (7th Cir. 2000) (discussing exhaustion of habeas claims). In other words, if relief is still available to a habeas petitioner in state court, a federal habeas court cannot rule on the petition.

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas court that were not raised in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claims to a federal habeas court. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir.1999)

8

(discussing exhaustion of claims) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Also, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. See Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory.") (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945)). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." See Coleman v. Thompson, 501 U.S. 722, 729 (1991). "'In the habeas context, the application of the independent and adequate state ground doctrine . . . is grounded in concerns of comity and federalism.'" Trest v. Cain, 522 U.S. 87, 89 (1997) (quoting Coleman, 501 U.S. at 729-30). Thus, when a state court determines that a habeas petitioner waives a claim in state court, that waiver is an independent and adequate state ground that bars federal habeas relief. See Harris v. Reed, 489 U.S. 255, 258 (1989) (citing Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)).

Federal courts may review defaulted claims only if: (1) the petitioner shows cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a constitutional violation has resulted in the conviction of one who is actually innocent. See Edwards v. Carpenter, – U.S. –, 120 S. Ct. 1587, 1591 (2000); Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 917 (citing cases). With these principles in mind, the court addresses Anderson's petition.

## C. Fourth Amendment

Anderson argues that the state court should have suppressed his confession because it was not attenuated from his illegal arrest. Respondent argues, and the court agrees, that this claim is barred by Stone v. Powell, 428 U.S. 465 (1976).

In Stone v. Powell, the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id., at 495. Stone does not define "full and fair litigation," but the Seventh Circuit has a three part test to determine the question. See Weber v. Murphy, 15 F.3d 691, 694 (7th Cir. 1994) (citing Pierson v. O'Leary, 959 F.2d 1385, 1391 (7th Cir. 1992)). A petitioner had a full and fair opportunity to litigate a Fourth Amendment claim if: (1) the petitioner clearly informed the state court of the factual basis for the claim and argued that those facts violate his Fourth Amendment rights; (2) the state court carefully and thoroughly analyzed the facts; and (3) the state court applied the proper constitutional case law to the case. See Weber, 15 F.3d at 694; see also Turentine v. Miller 80 F.3d 222, 224-26 (7th Cir. 1996) (noting a split of authority among the Circuit Courts of Appeals on the test for full and fair litigation, and affirming the analysis of Weber). As the Seventh Circuit noted, "habeas review of Fourth Amendment claims is reserved for instances where the state court made an egregious error . . . thus effectively depriving the petitioner of the ability to vindicate his federal rights in state court." Turentine, 80 F.3d at 226.

Although a habeas petitioner must satisfy all three elements of the Weber test, Anderson's argument focuses on the second element of Weber, that is, whether the state court carefully and thoroughly analyzed the facts. Anderson's argument is an improper attack on the merits of the state

10

court's finding of attenuation, rather than a demonstration that the state court did not carefully and thoroughly analyze the facts. See e.g. Rivera v. Page, No. 97 C 8381, 1998 WL 698913 at *3-4 (N.D. Ill. Oct. 2, 1998) (citing Stone v. Powell, and refusing to consider an attack on the merits of a Fourth Amendment claim on a habeas petition). In a circular argument, Anderson claims that the Illinois courts did not reach the merits of his attenuation claim because the facts show there was no attenuation between his illegal arrest and his confession. (See Mem. in support of Pet. pg. 5.) Anderson, however, ignores the procedural history of his attenuation argument. Indeed, the trial court held two hearings on his motion to suppress, where the court heard testimony from an investigating officer and legal argument concerning his arrest and confession. (See R. 16, Ex. M & R. 23.) After considering the facts and argument, the trial court found that Anderson's confession was attenuated from his arrest. (See R. 23.) On direct appeal, the appellate court analyzed and affirmed the attenuation finding, holding that Anderson's confession was properly admissible. (See R. 16, Ex. A, pp 14-16.) In reviewing Anderson's habeas petition, this court has reviewed the transcripts from both suppression hearings, and the Illinois appellate court opinion. It is clear that the state courts carefully and thoroughly analyzed the facts surrounding Anderson's attenuation argument. It is also clear that Anderson had ample opportunity to present his Fourth Amendment claim to the state courts. Compare Turentine, 80 F.3d at 226 (noting that habeas review of Fourth Amendment claims is proper only where the state court effectively deprived a petitioner of the ability to vindicate his federal rights). Anderson disagrees with the state court finding that his confession was attenuated, but that argument is an improper attack on the merits of the state court's analysis. See id. (and cases cited therein); Rivera, 1998 WL 698913 at *3-4. Accordingly, the court finds Anderson's Fourth Amendment argument barred by Stone v. Powell.

## D. Ineffective assistance of counsel

Next, Anderson argues that he was denied effective assistance of trial counsel, which is governed by the familiar two-part test of Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984) (holding that a claim of ineffective assistance of counsel exists when counsel's performance falls short of objective standards for reasonably effective representation, and prejudice results therefrom). Anderson asserts that his trial counsel was ineffective because counsel: (1) committed numerous unspecified errors; (2) failed to present a viable defense; (3) was unprepared for the prosecution's evidence; (4) engaged in a confusing exploration of the evidence; and (5) failed to fully investigate the circumstances of Anderson's confession. According to Anderson, these alleged errors demonstrate that counsel's performance fell below objective standards for reasonably effective representation. Anderson further alleges that the combination of these errors prejudiced his defense, in that there was no meaningful adversarial testing of the case against him. Respondent maintains that Anderson procedurally defaulted this argument by failing to present it to the Illinois courts.

Anderson has procedurally defaulted these claims of ineffective assistance of trial counsel. As discussed above, before bringing a federal habeas claim, a petitioner must first present the factual basis and controlling legal principles of his habeas claims to the state court. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims); Rodriguez, 193 F.3d at 916. In this case, Anderson failed to raise any claim of ineffective assistance of counsel on direct appeal. In his post conviction petition, Anderson made only a passing reference to ineffective assistance of trial counsel, which was in the context of counsel's alleged failure to preserve a sentencing issue. (See Post Conviction Pet. pg. 25-26.) The court has thoroughly reviewed

12

Anderson's state court pleadings, and finds that at no time in the state court did Anderson raise the same ineffective assistance of counsel issues that he alleges in this petition. Thus, Anderson failed to fairly present this habeas claim to the state courts, resulting in a procedural default of the claim. See O'Sullivan, 526 U.S. at 848; Rodriguez, 193 F.3d at 916.

Notwithstanding the procedural default, the court may review the claim if: (1) Anderson demonstrates cause for failing to present the claim to the state court, and prejudice resulting therefrom; or (2) Anderson shows that refusing to review the defaulted claim would result in a fundamental miscarriage of justice, which requires a showing that he is actually innocent. See Edwards v. Carpenter, – U.S. –, 120 S. Ct. 1587, 1591 (2000); Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 917. Anderson presents no evidence or argument that either of these exceptions applies to his claim of ineffective assistance of counsel. Moreover, the court has reviewed the record, and finds no basis for either exception. Accordingly, the court will not review the procedurally defaulted ineffective assistance of trial counsel claim.

### E. Excessive sentence

Anderson argues that his sentence is excessive, and is inconsistent with an "ends of justice" standard. Respondent asserts that Anderson procedurally defaulted the argument because: (1) Anderson failed to raise the issue on direct appeal; and (2) although Anderson raised the issue in his post-conviction petition, Anderson filed that petition late. Respondent asserts that both of these factors are independent and adequate state law grounds for rejection of the claim, which bars federal habeas review.

The court will address Anderson's excessive sentence claim on its merits. For a habeas court to rely on independent and adequate state grounds for finding procedural default, the last state court

rendering an opinion on the matter must clearly state that its decision rests on procedural grounds, as opposed to substantive grounds. See Braun v. Powell, – F.3d –, No. 00-1096, 2000 WL 1337163 at *2 (7th Cir. Sept. 18, 2000) (citing Harris v. Reed, 489 U.S. 255, 263 (1989)). Another recent Seventh Circuit case discusses procedural default in the context of an Illinois appellate court's granting of a motion to withdraw under Pennsylvania v. Finley, 481 U.S. 551 (1987), and affirmance of the denial of a post-conviction petition. See Wilkinson v. Cowan, – F.3d –, No. 99-1220, 2000 WL 1634994 (7th Cir. Nov. 1, 2000) (holding that a summary affirmance of the denial of a post-conviction petition, and the granting of leave to withdraw under Pennsylvania v. Finley, is an implicit decision on the merits of claims raised in the post-conviction petition). In this case, on review of the post-conviction petition, the Illinois appellate court stated that it had carefully reviewed the record, and agreed with Anderson's counsel that there were no appealable issues. (See R. 16 Ex I, pg. 3 & Ex. J, pg. 2.) Under the analysis employed in Wilkinson, such a finding is an implicit ruling on the merits of the issues raised in the post-conviction petition, which means that those issues are not procedurally defaulted. See Wilkinson, 2000 WL 1634994. Accordingly, the court will address the merits of Anderson's excessive sentence argument.

There is yet another wrinkle to this claim. As noted above, the court can only address issues that Anderson has fairly presented to the state court. See O'Sullivan, 526 U.S. at 848; Rodriguez, 193 F.3d at 916. In his habeas petition, Anderson simply argues that his concurrent term of natural life for first degree murder and 60 years for armed robbery is excessive. In his post-conviction petition, however, Anderson claimed that his sentence was grossly disparate to Jones' concurrent sentence of 35 years for murder and 30 for armed robbery. Thus, there is at least an argument that Anderson has procedurally defaulted his excessive sentence claim for failing to present it to the state

courts. Nevertheless, the court has carefully reviewed all the pleadings, and finds that Anderson's habeas argument is not so dissimilar from his post-conviction petition to warrant a procedural default of the claim. Liberally reading Anderson's habeas petition, the court construes it as complaining of a sentence that is unconstitutionally excessive and grossly disparate from his co-defendant's sentence. All of that said, the court turns to the merits of the excessive sentence argument.

The court must analyze Anderson's sentencing claim under the Eighth Amendment, which prohibits cruel and unusual punishments. U.S. Const. amend. VIII; see also Holman v. Page, 95 F.3d 481, 485-86 (7th Cir. 1996) (analyzing a habeas claim of disparate sentencing). As Holman makes clear, Anderson's argument is without merit. First, contrary to Anderson's argument, a sentence to natural life for first degree murder concurrent with a 60 year sentence for armed robbery is not excessive. Under Illinois law in effect at the time of Anderson's crime, natural life in prison is a permissible sentence for a first degree murder committed during the course of an armed robbery. See Il St Ch 38 ¶ 1005-8-1(1)(b) (West 1991). Indeed, a "sentence of natural life imprisonment for murder is eminently rational." Holman, 95 F.3d at 486; see also Koo v. McBride, 124 F.3d 869, 875 (7th Cir. 1997) (citing cases and noting that a federal habeas court generally does not review a sentence that falls within the state's statutory limit unless it is grossly disproportionate to the crime). As the Seventh Circuit noted, "Illinois has the highest interest in meting out severe punishment for ... brutality, both to deter others of similar moral depravity from committing like crimes and to prevent repeat offenses." Holman, 95 F.3d at 486. The court reiterates that Anderson and Jones hatched their plan to rob the victim several days before the murder. (See R. 16, Ex. A, pg. 3.) Anderson then lied in wait for the victim, and murdered him, just to rob him of a few dollars. (See id.) A sentence of natural life in prison for such a brutal crime is not unconstitutionally excessive.

See Holman, 95 F.3d at 485 (discussing Harmelin v. Michigan, 501 U.S. 957, 994-96 (1991)); see also Harmelin, 501 U.S. at 1009-10 (Kennedy, J., concurring, stating that the Eighth Amendment forbids sentences that are grossly disproportionate to the crime).

Second, Anderson's complaint concerning the alleged disparity between his sentence and Jones' sentence is not a basis for habeas relief. As long as a sentence is otherwise constitutional, mere disparity between co-defendants' sentences is not an independent Eighth Amendment violation. See Holman, 95 F.3d at 486 (citing Williams v. Illinois 399 U.S. 235, 243 (1970)); see also Price v. Washington, 54 F. Supp. 2d 837, 841-42 (N.D. Ill. 1999) (noting that evidence of a co-defendant's lesser sentence is irrelevant to the constitutionality of a given sentence); cf. United States v. Neyens, 831 F.2d 156, 158-59 (7th Cir. 1987) (direct appeal on a federal charge, holding that disparate sentences, alone, is not an abuse of discretion). As outlined above, the court has already found Anderson's sentence constitutional. Therefore, the alleged disparity with Jones' sentence is irrelevant to the constitutionality of Anderson's sentence. See Holman, 95 F.3d at 486; Price, 54 F. Supp. 2d at 158-59.

### III. CONCLUSION

For the foregoing reasons, the court denies Anderson's application for a writ of habeas corpus under 28 U.S.C. § 2254.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: 11-9-00

16